*151 OPINION OF THE COURT
Martin Schoenfeld, J.
"Remembering and appreciating the time, which was not so very long ago, I have found myself wondering more and more about the ball players. They are retired athletes now, but not old. They are scattered wide, but joined by a common memory. How are the years with them? What past do they remember? Have they come at length to realize what they had?” (Roger Kahn, The Boys of Summer.)
This action by members of the 1969 World Series Champion New York Mets presents an interesting issue of apparent first impression: whether the sale of clothing emblazoned with a group portrait of a legendary Major League Baseball team, without the permission of the individual players thereon, violates their rights to publicity under New York Civil Rights Law §§ 50, 51. For the reasons set forth herein, the court finds that such activity does violate those rights.
BACKGROUND
In 1969 the New York Mets won the Baseball "World Series”, undoubtedly America’s most fabled annual sporting event. Prior thereto, each of the plaintiffs had entered into what is known as a "Uniform Players Contract” with Metropolitan Baseball Club, Inc. (the Mets Ballclub), owner of the team. These contracts contained the following provision as paragraph 3 (c) thereof: "The Player agrees that his picture may be taken for still photographs, motion pictures or television at such times as the Club may designate and agrees that all rights in such pictures shall belong to the Club and may be used by the Club for publicity purposes * * * The player further agrees that during the playing season he will not make public appearances, participate in radio or television programs or permit his picture to be taken * * * or sponsor commercial products without the written consent of the Club, which shall not be withheld except in the reasonable interests of the Club”.
In the fall of 1990 defendant Garan, Inc. (Garan), a Virginia corporation licensed to do business in New York, began selling a greyish cotton shirt, described as a "three-quarter sleeve Jersey” (the jersey) with a formal, posed photograph (the 1969 Mets Team Photo) of the New York Mets team of 1969 (The Miracle Mets) on the front and various drawings and statistical facts spread on both sides as well as on the sleeves. The 1969 Mets Team Photo includes 27 Mets players, their manager *152 and coaches. Plaintiffs Art Shamsky, Tommy Agee, Bud Harrelson, Tug McGraw, and others, are mentioned by name in connection with various exploits and/or statistics during their "miracle” season and championship. In several instances the players’ numbers are discernable.
Defendant’s art director states as follows: "I decided to create a line of jerseys [etc.] that would tie into the public’s interest in baseball memorabilia. The concept of the program was to select well known teams of the past and create a jersey on which a vintage team picture would appear on the front along with the team name and logo and other relevant facts and statistics relating to the team * * * Keeping with this nostalgic feeling of the clothes, we named the line 'Long Gone.’ ”
The "Long Gone” phrase is used on the jersey itself, as is the phrase "Cooperstown Collection”. The jerseys are manufactured in Louisiana and are shipped directly to the customer.
Defendant did not receive the consent of plaintiffs to manufacture and distribute the jersey. It distributed, in New York and elsewhere, a shirt "approved and licensed by Major League Baseball bearing photographs of the 1969 World Champion New York Mets Baseball Team * * * which photographs were used by defendant under authority from the National Baseball Hall of Fame and Museum, Inc.” Defendant states that it pays a significant fee to Major League Baseball Properties, Inc., the licensing agent for Major League Baseball, for nonexclusive permission to use the Mets’ team name and logo.
Roy Howell, former manager of defendant’s "Long Gone” line, states that the 1969 Mets Team Photo was purchased from the National Baseball Hall of Fame and Museum, Inc. According to Howell the Hall of Fame owns the copyright to the 1969 Mets Team Photo and conveyed to defendant the right to "commercial use” thereof. He assumes that the Hall of Fame received the photo and the copyright from the Mets Ballclub.
Plaintiffs have submitted an affidavit from the Mets Ball-club’s General Counsel stating: "Any use of the plaintiffs’ names, images or likeness pursuant to paragraph 3 (c) of the Uniform Player’s Contract they each executed * * * could only be granted under a license from the New York Mets. Neither the New York Mets nor its authorized agent has issued a license to, or otherwise permitted [defendant] to use any of the plaintiffs’ names, images or likenesses.”
THE PLEADINGS
Plaintiffs commenced the instant action seeking injunctive relief for violations of their rights to publicity under Civil *153 Rights Law §§50, 51; compensatory and punitive (exemplary) damages for these violations; damages for conversion; and an accounting. Defendant’s answer denies that consent is needed from plaintiffs to sell the jersey, and sets forth several affirmative defenses, including that the complaint fails to state a cause of action and that the claims are preempted by Federal law.
THE INSTANT MOTION AND CROSS MOTIONS
Plaintiffs now seek summary judgment as to liability on their first three causes of action. Defendant cross-moves to dismiss the complaint on the grounds that plaintiffs lack standing and are preempted by Federal copyright law; to dismiss the first three causes of action to the extent that liability is predicated on defendant’s activities taking place "without” the State of New York; and to dismiss the fourth and fifth causes of action for failure to state causes of action.
DISCUSSION

Civil Rights Law

Civil Rights Law § 50 provides as follows: "A person * * * or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person * * * is guilty of a misdemeanor.”
Civil Rights Law § 51 provides as follows: "Any person whose name, portrait or picture is used within this state for advertising purposes or for the purposes of trade without the written consent first obtained * * * may maintain an equitable action * * * against the person * * * or corporation so using [his/ her] name, portrait or picture, to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use and if the defendant shall have knowingly used such person’s name, portrait or picture in such manner as is * * * declared to be unlawful by section fifty of this article, the jury, in its discretion, may award exemplary damages.” A brief description of the well-known history of these provisions is set forth in Stephano v News Group Publs. (64 NY2d 174, 182 [1984]): "The statutes have their origin in this court’s 1902 decision in Roberson v Rochester Folding Box Co. (171 NY 538). In that case it was held that a young woman whose picture had been used by the defendant on flour advertisements without her consent could not recover for a violation of her right to privacy because no such right was *154 recognized at common law. The Legislature responded the following year by amending the Civil Rights Law to establish a statutory 'right to privacy’ * * * Since the adoption of the statutes, this court has repeatedly held that the right of privacy is governed entirely by statute in this State [citations omitted].” A violation "consists of only two elements: the commercial use of a persons’s name or photograph and the failure to procure the person’s written consent for such use.” (Brinkley v Casablancas, 80 AD2d 428, 440 [1st Dept 1981].) The statute was enacted "to protect an individual against 'selfish, commercial exploitation’. (Gautier v. Pro-Football [304 NY 354 (1952)].) * * * [I]n construing the law, the courts have looked to its underlying purpose — the need it was intended to fill — and rather than adhering to its exact letter have interpreted the spirit in which it was written.” (Rand v Hearst Corp., 31 AD2d 406, 408-409 [1st Dept 1969].)
Defendant argues that the jersey "commemorat[es] the 1969 World Champion New York Mets team as a separate and historically recognizable entity * * * The commercial appeal and value in Garan’s 'Long Gone’ shirts is created by the team identity and not the pictures of the individual players * * * Garan’s use of the Team Picture is the classic case of the whole being greater than the sum of its parts.” This court agrees wholeheartedly that the team is commemorated, and that the whole is greater than the sum of its parts. But the players’ pictures are used, and the parts have an independent existence. This is not a situation where a thousand dots, each of which would be meaningless on its own, are arranged to form a meaningful image. Here, the components of the picture are the faces of individual baseball players, each with their individual right to publicity. Under New York law, these players have the right to commercial exploitation of their individual identities, even if collectively these identities may be somewhat less valuable than the identity of a greater, more memorable, whole.
Garan argues that the reproduction of the 1969 Team Picture on the jersey is of such poor quality, and the players’ countenances so small, that the individual players are difficult or impossible to identify. In Negri v Schering Corp. (333 F Supp 101, 103-104 [SD NY 1971]), the court stated as follows: "It is plain that a picture used for advertising purposes is not actionable under the statute unless it is a recognizable likeness of the plaintiff * * * Thus where a group picture used for commercial purposes has been taken from so great a distance as to *155 raise a question of the recognizability of any person in it, it has been held that a preliminary injunction need not be granted. Hayden v Bristol Myers Co., 159 (17) N.Y.L.J. Jan. 24, 1968, p. 16 col. 7 (Sup.Ct.).” In Hayden a ballerina moved to enjoin the showing of a commercial containing newsreel footage of her company performing. The court denied the issuance of a preliminary injunction on the ground that plaintiff had satisfied neither the "irreparable injury” nor "balancing of the equities” criteria for preliminary injunctive relief. (See, e.g., Aetna Ins. Co. v Capasso, 75 NY2d 860, 862 [1990].) However, the court stated that "[i]t may well be that virtually any use of another’s likeness for commercial purposes mandates judgment, leaving open * * * the question of damages.” (Hayden v Bristol Myers Co., NYLJ, Jan. 24, 1968, at 16, col 8, supra.) If "virtually any” unauthorized commercial use is actionable, certainly the use of a frontal photograph of some 30 formerly famous sports personalities must be one such case.
In Cohen v Herbal Concepts (63 NY2d 379, 385 [1984]), the Court held that whether an advertisement that included an unauthorized photograph of the sides and back of a mother and daughter walking nude through a shallow stream was a recognizable "portrait or picture” was a question of fact for the jury. "[A] jury could find that someone familiar with the persons in the photograph could identify them by looking at the advertisement * * * [I]dentifiability may be enhanced also in a photograph depicting two persons because observers may associate the two and thus more easily identify them when they are seen together.” This court finds that in the instant case "someone familiar with the persons in the photograph could identify them by looking at the” jersey. In Cohen, the mother’s and daughter’s faces were not visible (supra); here, the subjects are all facing the camera directly, and they are wearing their identifying uniforms. In Cohen, the plaintiffs were arguably identifiable to their husband-father; here, the plaintiffs, public figures, are identifiable to legions of baseball fans. (See also, Tin Pan Apple v Miller Brewing Co., 737 F Supp 826, 836-837 [SD NY 1990].)
Garan says that it cannot be held liable to those plaintiffs whose picture cannot be identified. However, even assuming, arguendo, that one or more plaintiffs could not be identified (which hardly seems likely considering the liberal test of identifiability implied in Cohen, supra), the remaining plaintiffs would still be entitled to injunctive relief, and the issue of individual identifiability can be resolved at the damage trial herein.

*156
Uniform Players Contract

Defendant’s argument that the instant action must be dismissed because plaintiffs gave away "all rights” in the 1969 Mets Team Photo to the Mets Ballclub pursuant to paragraph 3 (c) of the Uniform Players Contract is unavailing for several reasons. First, it is arguable that the team can only use the picture for publicity purposes, which is not what was done here. (See, St. Joseph’s Hosp. v Bennett, 281 NY 115 [1939] [bequest to hospital for permanent endowment, the interest of which would be used for ordinary maintenance expenses, could not be used to pay mortgage].) Indeed, in Baltimore Orioles v Major League Baseball Players Assn. (805 F2d 663, 665 [7th Cir 1986], cert denied 480 US 941 [1987] [baseball clubs "own exclusive rights to the televised performances of * * * players during major league baseball games”]), the court discussed paragraph 3 (c) as follows: "In 1947, the first year that the Clubs sold * * * television rights to major league baseball games, [¶ 3 (c)] was added to the contract * * * [¶ 3 (c)] merely grants the Clubs the rights to take the Players’ pictures for still photographs, motion pictures, and television and to use the pictures for publicity purposes.” (Supra, at 671-672 [emphasis added].)
Second, the second sentence of paragraph 3 (c) clearly contemplates that each player retains the right to commercial exploitation of his identity (albeit this right is restricted during "the playing season”). It is common knowledge that sports personalities retain the right to make commercial endorsements, etc., and do not cede this right to their teams.
Finally, and most fundamentally, the players are not seeking to assert a right "in the picture”; they are seeking to assert a right to the commercial exploitation of their identities. Clearly the team could not crop one player’s picture from the 1969 Mets Team Photo and use it to sell breakfast cereal or running shoes. In Cohen v Herbal Concepts (63 NY2d 379, 384 [1984], supra), the Court stated that Civil Rights Law §§ 50, 51 are "designed to protect a person’s identity, not merely a property interest in his or her 'name’, 'portrait’ or 'picture’.” (Cf., Barrows v Rozansky, 111 AD2d 105 [1st Dept 1985].)
Thus as a matter of contract interpretation plaintiffs did not authorize the Mets Ballclub to use the 1969 Mets Team Photo in contravention of what would otherwise be plaintiffs’ personal, respective rights to publicity. As the court recognized in Baltimore Orioles (805 F2d, at 676, n 24, supra): "[T]he Players’ rights of publicity * * * are preempted only if they would *157 be violated by the exercise of the Clubs’ copyright in the telecasts. A player’s right of publicity * * * would not be preempted if a company, without the consent of the player, used the player’s name to advertise its product * * * placed the player’s photograph on a baseball trading card * * * or marketed a game based on the player’s career statistics.” (Citations omitted.)

Federal Preemption

The United States Constitution article I (§ 8, cl [8]) grants to Congress the power "[t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries”. Pursuant thereto, 17 USC § 301 (a) provides, in part, as follows: "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright * * * are governed exclusively by this title.” However, 17 USC § 301 (b) (3) provides the other side of the coin: "[n]othing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to * * * activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright.”
A good description of the scope of Federal copyright preemption is supplied in Mayer v Wedgwood & Sons (601 F Supp 1523, 1535 [SD NY 1985]):
"[A] right which is 'equivalent to copyright’ is one which is infringed by the mere act of reproduction, performance, distribution or display * * * If under state law the act of reproduction, performance distribution or display * * * will in itself infringe the state created right, then such right is preempted. But if other elements are required, in addition to or instead of, the acts of reproduction, performance, distribution or display, in order to constitute a state created cause of action, then the right does not lie 'within the general scope of copyright,’ and there is no preemption.
"[See, 1 Nimmer, Copyright § 1.01 (B), at 1-14-16 (1995).] The prevailing test may be referred to as the 'extra element’ test. That extra element, however, must be one which changes the nature of the action so that it is qualitatively different from a copyright infringement claim.” (Citations omitted.)
In this court’s view, the extra element here is the "us[e] for advertising purposes, or for the purposes of trade, [of] the name, portrait or picture of any living person without *158 [consent].” Furthermore, a right to publicity — to the commercial exploitation of one’s identity — appears qualitatively different from copyright. In James v Delilah Films (144 Misc 2d 374, 378 [Sup Ct, NY County 1989], citing Mayer, supra, at 1533), it is stated that the "[[legislative history of 17 USC § 301 affirms that among the rights preserved by State law are actions pertaining to invasion of privacy.” In Ippolito v Ono-Lennon (139 Misc 2d 230 [Sup Ct, NY County 1988], mod 150 AD2d 300, 303 [1st Dept 1989]) the court rejected an argument that a Civil Rights Law §§ 50, 51 claim by a member of a backup band playing at a "charitable” concert, which concert then became the basis of a commercially released video, was preempted. The court relied (supra, at 236-237) on
"a Congressional Report (HR Rep No. 94-1476, 94th Cong, 2d Sess, reprinted in 1976 US Code Cong & Admin News 5659, 5748) which reads:
" '[C]ommon law rights of "privacy” [and] "publicity” * * * would remain unaffected as long as the causes of action contain elements, such as an invasion of personal rights * * * that are different in kind from copyright infringement.’ ” (See, 1 Nimmer, Copyright § 5.03 [B] [2] [d], at 5-50.1 [1995] ["Even if copyright vests in the photographer, (his/her) indiscriminate use of a photograph * * * may give rise to an action for * * * infringement of the right of publicity”]; Restatement [Third] of Unfair Competition § 46, comment i, at 536 [1995] ["ownership of copyright in a work that embodies the likeness or other indicia of a person’s identity will not prevent the imposition of liability * * * if the copyrighted work is used in a manner that infringes the person’s right of publicity”].)
Defendant relies on Baltimore Orioles v Major League Baseball Players Assn. (supra), which held that "the Players’ rights of publicity in their performances cannot escape preemption.” (805 F2d, at 679, supra.) However, a right of publicity "in a [particular] performance” is distinguishable from a right to commercial exploitation of one’s own identity. The Baltimore court, in fact, expressly stated that a player’s "right of publicity in his name or likeness would not be preempted” if the club, without consent, commercially exploited the player’s identity. (Baltimore Orioles v Major League Baseball Players Assn., supra, at 676, n 24 [citations omitted].)

Activities "Without” New York

Defendant asks that to the extent the complaint seeks damages for action "without the State of New York” it should be *159 stricken, citing Pierrottie v Dell Publs. Co. (199 F Supp 686, 688 [SD NY 1961]): "[Civil Rights Law] Section 51 literally would give this plaintiff a right of action if* * * his photograph was 'used’ in this state without his consent for purposes of advertisement or trade. And in such action plaintiff would be entitled to recover damages 'for any injuries sustained by reasons of such use, ’ i. e., the injuries for which damages are sought must be shown to be causally related to the use of his photograph within this state as proscribed by § 51.
"[A] * * * cursory reading of the complaint might have left defendant with the impression that plaintiff sought damages for the publication or use of his photograph without the State of New York * * * This * * * is not the case. In our opinion the complaint states a claim under § 51 of the Civil Rights Law for damages arising out of the ’use’ in New York State of plaintiff’s photograph. ” (Emphasis added.)
Indeed, the issue of out-of-State use was directly addressed in Rosemont Enters. v Urban Sys. (42 AD2d 544 [1st Dept 1973]): ’’the injunction should be restricted to activities, such as manufacturing, distributing, selling etc., in the State of New York. In other jurisdictions * * * the law with respect to the right of privacy could have other efficacy with respect to a public figure * * * both in common-law interpretation and in statutes.” (Emphasis added; citations omitted.)
Plaintiffs argue that the Civil Rights Law confers jurisdiction as long as plaintiff’s name or likeness was used illegally in this State, citing Negri v Schering Corp. (333 F Supp 101 [SD NY 1971], supra). In Negri the court simply held that a person domiciled outside of New York could assert a Civil Rights Law §§ 50, 51 claim based on a defendant’s activity within New York. Thus the focus was on activity occurring in New York: "In [Hill v Hayes, 27 Misc 2d 863 (Sup Ct, NY County, I960)] it was squarely held that plaintiff’s out-of-state residence was no bar to an action under sections 50 and 51 where the offending publication was widely circulated in New York. Defendant * * * concedes that [the] advertisement was widely circulated in this state. ” (Supra, at 106 [emphasis added].) In the final analysis, although Negri may raise the issue of the effect, if any, of journals that were circulated out of State, it did not address this issue, and thus provides no support for plaintiffs’ contention in this regard. Thus no case of which this court is aware would detract from a literal reading of Civil Rights Law § 51: that relief can only be obtained against "us[e] within [New York] [S]tate”. (See, Beer & Pekowsky, Rights of Public *160 ity After "Forrest Gump”, NYLJ, May 31, 1995, at 1, col 4 ["In addition, depending on where the infringing act occurs, a plaintiff may have to bring several state actions to get full relief’].)
CONCLUSION
Defendant has created an attractive jersey that conveys historical information and fits within an interesting, elegant series designed to highlight classic teams of the national pastime. Still, for a century this State has provided legal protection to the right of every individual to the commercial exploitation of his or her identity. Whether defendant included the historical information on its product, and set up the entire line of products, out of a love of the game, astute marketing, or for other reasons, the fact remains that it is attempting to cash in on plaintiffs’ skill and renown on the baseball diamond. Without plaintiffs’ consent, that is something defendant simply may not do.
In this regard, we note defendant’s argument that the jersey "is focused on a World-Series-winning baseball team and not on any individual who happened to be a player.” It is not for us to determine whether someone "happened to be a player” on a championship team. (Cf., Shakespeare, The Tragedy of Macbeth, act V, scene v, lines 24-26 ["Life’s but a walking shadow, a poor player, That struts and frets his hour upon the stage, And then is heard no more”].) The World Series is won by all the players on the winning team, and each receives a coveted World Series Ring. Thus, each player is entitled to exploit commercially the fame that such skill, luck, or both, has won for him. "There is no question but that a celebrity has a legitimate proprietary interest in his public personality. He must be considered as having invested years of practice and competition in a public personality which eventually may reach marketable status.” (Brinkley v Casablancas, supra, 80 AD2d, at 441.) Protection of a personality with "marketable status,” established by legislation and guarded by our courts, is the right we uphold today.
Thus for the reasons set forth herein, plaintiffs are granted summary judgment as to liability on their first three causes of action; defendants are enjoined from selling the jersey or from otherwise violating plaintiffs’ rights pursuant to Civil Rights Law §§ 50, 51; plaintiffs may seek a trial of damages after disclosure; defendant’s affirmative defense of Federal preemption is stricken; defendant’s cross motion to dismiss the first *161 three causes of action is denied to the extent that liability is predicated on activities within New York State and is granted to the extent that liability is predicated on defendant’s activities without New York State; and defendant’s cross motion to dismiss the fourth and fifth causes of action for conversion and an accounting, respectively, is granted as having been preempted by the Civil Rights Law.